686 F.2d 953
 222 U.S.App.D.C. 327
 AMERICAN BANKERS ASSOCIATION and Tioga State Bank, Appellants
v.
Lawrence B. CONNELL, Jr., Administrator of the National
Credit Union Administration, et al.
INDEPENDENT BANKERS ASSOCIATION OF AMERICA, a corporation, Appellant
v.
FEDERAL HOME LOAN BANK BOARD, et al.
UNITED STATES LEAGUE OF SAVINGS ASSOCIATIONS, an Illinois
not-for-profit corporation, Appellant
v.
BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, an agency
of the United States, et al.
 Nos. 78-1337, 78-1849 and 78-2206.
 United States Court of Appeals,
District of Columbia Circuit.
 April 20, 1979.
 
 Appeals from the United States District Court for the District of Columbia (D.C. Civil Action Nos. 77-2102, 76-0105 and 78-0878).
 Before McGOWAN, TAMM and WILKEY, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 These causes came on to be heard on their records on appeal from the United States District Court for the District of Columbia, 463 F.Supp. 342, 447 F.Supp. 296, and they were argued by counsel before this panel.
 
 
 2
 It appears to the court that the development of fund transfers as now utilized by each type of financial institution involved herein, commercial banks with "Automatic Fund Transfers," savings and loan associations with "Remote Service Units," and federal credit unions with "Share Drafts," in each instance represents the use of a device or technique which was not and is not authorized by the relevant statutes, although permitted by regulations of the respective institutions' regulatory agencies. Specifically, the transfer from an interest-bearing time deposit (savings) account to a noninterest-bearing demand (checking) account by the Automatic Fund Transfer system, authorized by the Board of Governors of the Federal Reserve System in 43 Fed.Reg. 20,001 (1978) (to be codified in 12 C.F.R. § 217.5(c)(2) and (3)), is that "indirect ( ) ... device" prohibited by 12 U.S.C. § 371a (1976);[1] the Remote Service Units utilized by many savings and loan associations, pursuant to Federal Home Loan Bank Board regulations (12 C.F.R. § 545.4-2 (1978)) which permit the withdrawal of funds from an interest-bearing time deposit account by a device functionally equivalent to a check, are in violation of the prohibition against checking accounts contained in Section 5(b)(1) of the Home Owners' Loan Act of 1933 (12 U.S.C. § 1464(b)(1) (1976)); and the Share Drafts utilized by some federal credit unions, pursuant to National Credit Union Administration regulation (12 C.F.R. § 701.34 (1978)), are the practical equivalent of checks drawn on these interest-bearing time deposits in violation of the provisions of the Federal Credit Union Act, 12 U.S.C. §§ 1751-90 (1976).[2]
 
 
 3
 The history of the development of these modern transfer techniques reveals each type of financial institution securing the permission of its appropriate regulatory agency to install these devices in order to gain a competitive advantage, or at least competitive equality, with financial institutions of a different type in its services offered the public. The net result has been that three separate and distinct types of financial institutions created by Congressional enactment to serve different public needs have now become, or are rapidly becoming, three separate but homogeneous types of financial institutions offering virtually identical services to the public, all without the benefit of Congressional consideration and statutory enactment.
 
 
 4
 This court is convinced that the methods of transfer authorized by the agency regulations have outpaced the methods and technology of fund transfer authorized by the existing statutes. We are neither empowered to rewrite the language of statutes which may be antiquated in dealing with the most recent technological advances, nor are we empowered to make a policy judgment as to whether the utilization of these new methods of fund transfer is in the overall public interest. Therefore, we have no option but to set aside the regulations authorizing such fund transfers as being in violation of statute. We do so with the firm expectation that the Congress will speedily review the overall situation and make such policy judgment as in its wisdom it deems necessary by authorizing in whole or in part the methods of fund transfer involved in this case or any other methods it sees fit to legitimize, or conversely, by declining to alter the language of existing statutes, thus sustaining the meaning and policy expressed in those statutes as now construed by this court.
 
 
 5
 We recognize that enormous investments have been made by various financial institutions in the installation of new technology, that methods of financial operation in the nation have rapidly grown to rely on much of this, and that a disruption of the offered services would necessarily have a deleterious impact on the financial community as a whole, in the absence of the certainty that new procedures are authorized for the foreseeable future, which certainty only a Congressional enactment can give.
 
 
 6
 We recognize that there are arguments that Congress has, at some times and in some measure, tacitly approved part of these regulatory authorizations, but by no means directly, explicitly, or in the whole. We further recognize that the wisdom of the transfer procedures permitted by the regulations of the several agencies is a matter of high public financial policy, involving the financial interests not only of the parties before this court in these proceedings, but also of other large groups in the nation. It is the responsibility of the Congress and not the courts to determine such policy.
 
 On consideration of the foregoing, it is
 
 7
 ORDERED AND ADJUDGED by this court that the judgments of the district courts under review herein are reversed and the cases are remanded to the respective district courts with instructions to vacate and set aside the applicable portions of the following regulations:
 
 
 8
 (1) 43 Fed.Reg. 20,001 (1978) (to be codified in 12 C.F.R. § 217.5(c)(2) and (3)) of the Board of Governors of the Federal Reserve System;
 
 
 9
 (2) 43 Fed.Reg. 20,222 (1978) (to be codified in 12 C.F.R. § 329.5(c)(2)) of the Board of Directors of the Federal Deposit Insurance Corporation;
 
 
 10
 (3) 12 C.F.R. § 545.4-2 (1978) of the Federal Home Loan Bank Board; and
 
 
 11
 (4) 12 C.F.R. § 701.34 (1978) of the National Credit Union Administration; and it is
 
 
 12
 FURTHER ORDERED, by the Court, that the effectiveness of this Judgment, insofar as it directs that the subject regulations be vacated and set aside, is stayed until 1 January 1980 in the expectation that the Congress will declare its will upon these matters; and it is
 
 
 13
 FURTHER ORDERED, by the Court, that the Clerk is directed to enter copies of this Judgment in each of the captioned cases.
 
 
 
 [1]
 Similarly, the Automatic Fund Transfer system authorized by the Federal Deposit Insurance Corporation in 43 Fed.Reg. 20,222 (1978) (to be codified in 12 C.F.R. § 329.5(c)(2)) is in violation of 12 U.S.C. § 1828(g) (1976), which directs the Board of Directors of the FDIC to prohibit the payment of interest on demand deposits. The court is of the view that the Automatic Fund Transfer system allows, in effect, for interest to be paid on demand deposits
 The Automatic Fund Transfer system also, in its effect, violates 12 U.S.C. § 1832(a) (as amended by Pub.L.No. 95-630, § 1301, 92 Stat. 3712, 10 Nov. 1978), which provides that, except in seven New England states, withdrawals from savings accounts may not be made by negotiable or transferable instruments for the purpose of making transfers to third parties.
 
 
 [2]
 The Act does not contain an express grant of power to offer share drafts, nor can that power be implied in view of the legislative history of laws regulating financial institutions (see Brief for Appellant in No. 78-1337, at 9-26), which demonstrates an intent on the part of Congress not to authorize federal credit union share draft programs